**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION AT TOLEDO**

| | | |
|---|---|---|
| **ATASHA GRAY,** 4856 Brinthaven Dr. Sylvania, OH 43560 | : : : : | Case No.: 3:21-cv-1506 |
| Plaintiff, | : : | Judge |
| vs. | : : | Magistrate Judge |
| **FORD MOTOR COMPANY**, c/o Registered Agent: CT Corporation System 4400 Easton Commons Way, Suite 125 Columbus, OH 43219 | : : : : : : | **Jury Demand Endorsed Hereon** |
| Defendant. | : | |

## COMPLAINT

NOW COMES Plaintiff Atasha Gray ("Plaintiff") and proffers this Complaint for damages against Defendant Ford Motor Company ("Defendant").

## JURISDICTION AND VENUE

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended and the Ohio Laws Against Discrimination, R.C. Chapter 4112 ("Chapter 4112").

2. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, which provide for original jurisdiction of Plaintiff's claims arising under the laws of the United States.

3. This Court also has jurisdiction over Plaintiff's claims under the statutory laws of Ohio pursuant to supplemental jurisdiction as codified at 28 U.S.C. § 1367.

4. Venue is proper pursuant to 28 U.S.C. § 1391, because Plaintiff entered into an employment relationship with Defendants and performed her job duties for Defendants in Allen

County, Ohio in the Western Division of the Northern District of Ohio, and Defendants are doing and have done substantial business in the Northern District of Ohio.

## THE PARTIES

5. Plaintiff Atasha Gray is an individual, a United States Citizen, and a resident of Lucas County.

6. Defendant Ford Motor Company is a foreign corporation registered to do business in Ohio and conducting business in the Northern District of Ohio.

7. At all times relevant herein, Plaintiff was an "employee" of Defendants as that term is defined by Title VII and Ohio law.

8. At all times relevant herein, Defendant was Plaintiff's "employer" as that term is defined by Title VII and Ohio law.

## FACTUAL BACKGROUND

9. Plaintiff began her employment with Defendant on or around March 9, 2015.

10. Plaintiff was initially employed in the position of "Test Roll" at Ford's Flat Rock Assembly Plant in Flat Rock, Michigan.

11. On or around June 29, 2019, due to a shift reduction at the Flat Rock plant, Plaintiff was transferred to the Lima Engine Plant in Lima, Ohio.

12. Plaintiff was placed in the role of Production Associate and began reporting to Tracy Vera (Production Supervisor) and Chris Miller (Senior Process Coach).

13. Plaintiff was initially placed on the night shift.

14. Plaintiff is an African American Muslim. She wears a hijab daily in observance of her religion.

15. Within several weeks after her transfer to the Lima plant, on or around July 19, 2019, Plaintiff learned of a series of discriminatory posts and comments on the Union's Facebook page. These posts appeared on the Facebook page entitled "Local 1219 Real Talk."

16. On several occasion throughout her shift that day, coworkers approached Plaintiff and asked if she has seen the Facebook postings.

17. The comments were related to the enforcement of Defendant's dress code at the Lima plant as it pertains to individuals who wore hijabs (or "headwraps") at work. Several employees stated that Defendant's employees with religious observations should not be afforded special privileges and exemptions from the dress code regulations.

18. The same day, Plaintiff reported the discriminatory Facebook posts to HR Representative, Maria Gonzales.

19. Plaintiff showed Ms. Gonzales the posts, and Ms. Gonzales replied that Plant HR Manager, Paul Edds was already aware of the posts. She stated that someone from the corporate office would be addressing the posts with the employees.

20. Plaintiff stated that she hoped Defendant addressed the situation quickly. Ms. Gonzales responded that because the posts were not on an official Ford Facebook page—even though Defendant was aware of the posts—there was likely little Defendant would do.

21. Plaintiff felt extremely uncomfortable and embarrassed by the comments circulating among her coworkers.

22. Despite this hostile environment, Plaintiff continued to successfully perform her job duties. She was promoted to the role of Team Lead and given a pay increase in or around late October 2019.

23. In or around mid-November 2019, Plaintiff learned of another series of discriminatory Facebook posts on the Union employees' Facebook page. These posts by Defendant's employees included: (1) a photo of a woman wearing a hijab with the words captioned: "A head diaper is required when you have shit for brains"; (2) a photo of another woman wearing a hijab with the caption: "In my country I am forced to keep my mouth shut. But here I am free to talk trash about this country in hopes that I can change it to a country where I am forced to keep my mouth shut"; and (3) a photo of the American flag next to a photo of the Confederate flag, with a caption stating that both flags deserve honor and respect.

24. On or around November 14, 2019, Plaintiff met with HR Representative, Jennifer Rigdon. During the conversation, Plaintiff complained about her recent discovery of numerous discriminatory Facebook postings by Defendant's employees.

25. Specifically, Plaintiff complained that a coworker, Richard Slage, had posted pictures with captions ("memes") that contained derogatory statements directed at her Muslim religion.

26. Further, Plaintiff stated that Mr. Slage often gave her intimidating looks and stared at her while she was working.

27. The next day, on or around November 15, 2019, Plaintiff met with Mr. Edds to discuss the Facebook posts.

28. Mr. Edds stated that he was aware of the Facebook posts, but that Defendant could not do anything about social media postings.

29. During Plaintiff's shift on or around December 16, 2019, Hope Gains, Production Associate, walked by Plaintiff and caressed her butt.

4

30. Immediately thereafter, Plaintiff reported the unwelcome touching to her supervisor, Tracy Vera. Ms. Vera did not ask Plaintiff for a written statement; instead, Ms. Vera said she would speak with Chris Miller about the incident.

31. Two days later, Mr. Miller informed Plaintiff that he spoke to Hope Gains about the unwanted touching. He stated, while laughing, that Ms. Gains admitted to the touching, but stated she didn't "mean anything" by it.

32. On or around December 20, 2019, Plaintiff spoke with Nicholas Hufman, Union Committeeman, regarding the discriminatory Facebook posts and the incident with Hope Gains.

33. Thereafter, Plaintiff and Mr. Hufman met with Jennifer Rigdon, during which time Plaintiff reiterated her complaints of the discriminatory Facebook posts, hostile environment, the unwanted sexual touching by her coworker, and Defendant's failure to take any action to remedy her complaints.

34. Ms. Rigdon indicated that she would begin an investigation into Plaintiff's complaints.

35. However, rather than taking action to rectify Plaintiff's discriminatory and hostile environment, Defendant investigated Plaintiff's behavior.

36. During the "investigation," Plaintiff's supervisors—to whom she had complained about these issues—stated that Plaintiff inappropriately touched *them*.

37. Ms. Vera stated that Plaintiff allegedly grabbed her breast.

38. Mr. Miller stated that Plaintiff allegedly felt the outside of his pants pocket.

39. Further, Defendant gathered several other statements from employees with whom Plaintiff did not work. These employees allegedly stated that Plaintiff was very "touchy" and made people uncomfortable at work.

40. Plaintiff provided Ms. Rigdon a written statement on or around January 14, 2020 as part of Defendant's investigation into her complaints. Plaintiff also provided screen shots of the discriminatory Facebook posts.

41. Because Plaintiff was not confident in Lima Engine Plant's management to rectify the situation, she also called Defendant's employee hotline on or around January 21, 2020. During the call, she complained about racial and religious discrimination, intimidation, and harassment.

42. On or around January 29, 2020, Ms. Rigdon met with Plaintiff and Mr. Hufman to share the results of the investigation. Ms. Rigdon explained that she investigated Plaintiff's allegations and closed them, finding that neither discipline nor further action was warranted.

43. Ms. Rigdon then stated that Defendant would be assessing discipline against Plaintiff. Specifically, Plaintiff would be subject to a 30-day unpaid suspension, and she would lose her role (and pay rate) of Team Lead.

44. Plaintiff was shocked and extremely upset by this news. She immediately complained that none of the allegations against her had been substantiated, yet she was suspended and demoted. In return, Hope Gains had admitted to sexually assaulting her, yet had not been disciplined.

45. Upon information and belief, only after Plaintiff's reaction did Defendant subsequently issue Ms. Gains a 1-week suspension.

46. Thereafter, Plaintiff took a 15-month unpaid medical leave due to the extreme emotional distress caused by the events at the Lima Engine Plant.

47. During this time, Plaintiff underwent treatment form her primary care provider, as well as her psychologist.

48. Plaintiff is still undergoing a regime of therapy and medication to assist her with managing the symptoms of her mental health conditions, which have been exacerbated due to the treatment which she was, and continues to be, subjected to.

49. Plaintiff returned to work from her medical leave on or around April 1, 2021.

50. Plaintiff has not been reinstated to her Team Lead position or pay level.

51. Further, Plaintiff was moved from night shift to day shift, and required to work alongside her two supervisors, Ms. Vera and Mr. Miller, who were also moved to the day shift.

52. Since Plaintiff's return to work, she has been subjected to continual harassment and stalking by a coworker, Levi Romick. Mr. Romick was interviewed by Defendant as part of the "investigation" into Plaintiff's complaints.

53. In May 2021, Plaintiff submitted two complaints regarding Mr. Romick's harassing behavior, which were memorialized in "Employee Statement Records."

54. On May 4, 2021, Plaintiff complained that she was being forced to work near Mr. Romick, and that she was afraid he would cause her physical harm based on his behavior. Defendant refused to take any action.

55. On May 13, 2021, Mr. Romick walked past Plaintiff at work, called her a "bitch" and stated he would kill her.

56. Fearing for her safety, Plaintiff called the police to report Mr. Romick's threat. The police arrived and required Mr. Romick to leave the plant. Mr. Romick was temporarily suspended, and Plaintiff was instructed to stay home from work the following day in case Mr. Romick came to the plant and tried to retaliate against her.

57. These events at the Lima Engine Plant continue to exacerbate the symptoms of Plaintiff's mental health conditions and are unreasonably interfering with her ability to do her job.

58. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant.

59. The EEOC issued a notice of right to sue on May 5, 2021. (*See* Notice of Right to Sue, attached hereto as Exhibit A)

60. Plaintiff exhausted her administrative remedies against Defendant prior to filing her Complaint in this action.

## COUNT I
### Title VII – Retaliation

61. All of the preceding paragraphs are realleged as if fully rewritten herein.

62. Plaintiff engaged in a protected activity when she complained to Defendant about the discriminatory Facebook posts, a hostile work environment, unwanted sexual touching by her coworker, and Defendant's failure to take any action to remedy Plaintiff's complaints.

63. Defendant knew that Plaintiff engaged in a protected activity.

64. Defendant intentionally retaliated against Plaintiff for engaging in the abovementioned protected activities by subjecting Plaintiff to disparate treatment, demoting her, disciplining her, suspending her, subjecting her to a hostile work environment, and/or otherwise discriminating against Plaintiff in the terms, privileges, and conditions of her employment.

65. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and loss of salary, benefits, and other terms, privileges, and conditions of employment for which Defendant is liable.

66. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT II
### R.C. § 4112 – Retaliation

67. All of the preceding paragraphs are realleged as if fully rewritten herein.

68. Plaintiff engaged in a protected activity when she complained to Defendant about the discriminatory Facebook posts, a hostile work environment, unwanted sexual touching by her coworker, and Defendant's failure to take any action to remedy Plaintiff's complaints.

69. Defendant knew that Plaintiff engaged in a protected activity.

70. Defendant intentionally retaliated against Plaintiff for engaging in the abovementioned protected activities by subjecting Plaintiff to disparate treatment, demoting her, disciplining her, suspending her, subjecting her to a hostile work environment, and/or otherwise discriminating against Plaintiff in the terms, privileges, and conditions of her employment.

71. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendant is liable.

72. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT III
### Title VII – Hostile Work Environment

73. All of the preceding paragraphs are realleged as if fully rewritten herein.

74. Defendant engaged in conduct that violates Title VII by subjecting Plaintiff to severe and pervasive harassment and/or creating of a hostile work environment in the terms and conditions of her employment based her on religion.

75. The harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, and privileges of Plaintiff's employment.

76. Defendant knew or should have known of the harassment and did not take immediate and corrective action.

77. Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities by Defendant.

78. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendant is liable.

79. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendants are liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT IV
### R.C. § 4112 – Hostile Work Environment

80. All of the preceding paragraphs are realleged as if fully rewritten herein.

81. Defendant engaged in conduct that violates Ohio law by subjecting Plaintiff to severe and pervasive harassment and/or creating of a hostile work environment in the terms and conditions of her employment based on her religion.

82. The harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, and privileges of Plaintiff's employment.

83. Defendant knew or should have known of the harassment and did not take immediate and corrective action.

84. Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities by Defendant.

85. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendant is liable.

86. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

**WHEREFORE**, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, front pay, statutory/ liquidated damages, compensatory damages, expert witness fees, attorneys' fees and expenses, pre- and post-judgment interest, and punitive damages in an amount to be determined at trial, and any and all other relief which the Court deems just and appropriate.

Respectfully submitted,

*/s/ Carrie J. Dyer*

Carrie J. Dyer (0090539)
*Carrie@MansellLawLLC.com*
Greg R. Mansell (0085197)
*Greg@MansellLawLLC.com*
**Mansell Law, LLC**
1457 S. High St.
Columbus, Ohio 43207
Ph: (614) 610-4134
Fax: (614) 547-3614

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

*/s/Carrie J. Dyer*
Carrie J. Dyer (0090539)